UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 1 5 2006

at _____ o'clock and _10_ min_____M
SUE BEITIA, CLERK

TURTLE ISLAND RESTORATION
NETWORK; et al.,

Plaintiffs - Appellants,

HAWAII LONGLINE ASSOCIATION,

Intervenor - Appellee,

V.

UNITED STATES DEPARTMENT OF
COMMERCE; et al.,

Defendants - Appellees.

No.  05-15035
D.C. No.  CV-04-00528-DAE

**JUDGMENT**

Appeal from the United States District Court for the District of Hawaii (Honolulu).

This cause came on to be heard on the Transcript of the Record from the United States District Court for the District of Hawaii (Honolulu) and was duly submitted.

On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED**.

Filed and entered 02/21/06

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

MAY 1 1 2006

by: _____
Deputy Clerk

**Form 10.  Bill of Costs**

R E C E I V E D
CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

MAR - 7 2006

FILED
DOCKETED — 3/7 gm
DATE                    INITIAL

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with Circuit Rule 39-1.  A late bill of costs must be accompanied by a motion showing good cause.  Please refer to FRAP 39, 28 U.S.C. § 1920, and Circuit Rule 39-1 when preparing your bill of costs.

Turtle Island Restoration Network v. U.S. Dept. of Commerce    CA No. 05- 15035

The Clerk is requested to tax the following costs against: Turtle Island Restoration Network et al.

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, Circuit Rule 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
| | No. of Docs.* | Pages per Doc. | Cost per Page ** | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page | TOTAL COST |
| Excerpt of Record | | | | | | | | |
| Appellant's Brief | | | | | | | | |
| Appellee's Brief | 20 | 133 | .10 | 266.00 | | | | |
| Appellant's Reply Brief | | | | | | | | |
| | | | TOTAL | $ 266.00 | | | TOTAL | $ |

**Form 10. Bill of Costs - *Continued***

**Other:**    Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys fees **cannot** be requested on this form.

* If more than 7 excerpts or 20 briefs are requested, a statement explaining the excess number must be submitted.

** Costs per page may not exceed .10 or actual cost, whichever is less. Circuit Rule 39-1.

I, *Laurie Beale* , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature: _____
Date: _____*3/6/06*_____

Name of Counsel (printed or typed): *Laurie K. Beale*
Attorney for: *The Hawaii Longline Association,*
_____*Defendant - Intervenor - Appellee*_____

Date: _____*5/11/06*_____    Costs are taxed in the amount of $ _____*266.00*_____

                        Clerk of Court
                        By: _____ , Deputy Clerk

A TRUE COPY
CATHY A. CATTERSON
Clerk of Court
ATTEST

MAY 1 1 2006

by _____
Deputy Clerk

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

TURTLE ISLAND RESTORATION
NETWORK; KA 'IWA KUA LELE;
CENTER FOR BIOLOGICAL DIVERSITY,
            *Plaintiffs-Appellants,*

HAWAII LONGLINE ASSOCIATION,
            *Intervenor-Appellee,*

v.

UNITED STATES DEPARTMENT OF
COMMERCE; NATIONAL MARINE
FISHERIES SERVICE; CARLOS M.
GUTIERREZ, in his official capacity
as Secretary of the Department of
Commerce,

            *Defendants-Appellees.*

No. 05-15035

D.C. No.
CV-04-00528-DAE

OPINION

Appeal from the United States District Court
for the District of Hawaii
David A. Ezra, District Judge, Presiding

Argued and Submitted
November 17, 2005—Honolulu, Hawaii

Filed February 21, 2006

Before: Michael Daly Hawkins, M. Margaret McKeown, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge McKeown

1791

## SUMMARY

### Environmental Law/Government Regulation

The court of appeals affirmed a judgment of the district court. The court held that claims challenging the regulation-authorized reopening of a swordfish fishery, although framed as violations of the Administrative Procedure Act (APA) and environmental statutes, were in actuality challenges to the regulations reopening the fisheries; accordingly, the 30-day time limitation in 16 U.S.C. § 1855(f), the judicial review provision of the Magnuson-Stevens Fishery Conservation and Management Act, applied.

In 2004, appellee the National Marine Fisheries Service (NMFS) issued regulations reopening the part of the Hawaii-based longline fishery that targeted swordfish. About five months later, appellants including the Turtle Island Restoration Network brought suit in district court challenging the reopening of the fisheries. Turtle Island's complaint did not reference the Magnuson Act, but instead alleged violations of the Migratory Bird Treaty Act, the National Environmental Policy Act (NEPA), the Endangered Species Act (ESA), and the APA. The district court denied Turtle Island's motion for preliminary injunctive relief and dismissed the complaint for lack of jurisdiction, finding that Turtle Island's claims, though framed in terms of violations of the APA and environmental statutes, were in actuality challenges to the reopening of the fishery.

Turtle Island appealed.

[1] Resolution of this case was found in the plain language of § 1855(f). A court's task is to construe what Congress has enacted. [2] The congressional directive was clear and uncomplicated: a party seeking judicial review of regulations promulgated by the Secretary under the Magnuson Act must do so within 30 days of their promulgation.

[3] The essence of Turtle Island's complaint was not in dispute—it challenged the reopening of the swordfish fishery. That opening came about as a result of the regulations NMFS published, yet Turtle Island did not file suit until almost five months later, well beyond the 30-day limit. [4] Notably, § 1855(f) does not state that challenges under the Magnuson Act must be brought within 30 days, but instead that judicial review of regulations promulgated by the Secretary under the Magnuson Act must be brought within the stated time limit. [5] Thus, the decisive question is whether the regulations are being attacked, not whether the complaint specifically asserts a violation of the Magnuson Act. [6] As the 2004 regulations were the source of authorization of swordfish longlining, Turtle Island's challenge could not credibly be viewed as anything other than an attack on the regulations.

[7] Although an agency's issuance of a record of decision under NEPA can constitute a final agency action reviewable under the APA, to the extent that Turtle Island challenged the record of decision here, it did so as a stepping stone to NMFS's promulgation of regulations reopening the swordfish fishery. The record of decision was the foundation for those regulations and all of the claims flowed from the reopening of the fishery. [8] Turtle Island's ESA claim was also premised on the issuance of regulations reopening the fishery.

[9] Nothing in § 1855(f) purported to distinguish between procedural and substantive challenges to regulations under the Magnuson Act, and the court of appeals divined no basis for such a dichotomy. Section 1855(f)(1)(B) authorizes a reviewing court to set aside any regulation that is not in accordance with law, or without observance of procedure required by law. Section 1855(f) is not limited to purely substantive challenges to the regulations, but encompasses claims that NMFS, in promulgating regulations, violated "other applicable law," including procedural statutes. [10] It had to be concluded that Turtle Island's claims were a challenge to the regulations reopening the swordfish fishery. Accordingly, the 30-day time

limitation of § 1855(f) applied and the district court's dismissal of Turtle Island's complaint had to be affirmed.

---

## COUNSEL

Paul H. Achitoff and Isaac H. Moriwake, Earthjustice, Honolulu, Hawaii, for the plaintiffs-appellants.

M. Alice Thurston, United States Department of Justice, Washington, D.C., for the defendants-appellees.

Jeffrey W. Leppo and Laurie K. Beale, Stoel Rives, LLP, Seattle, Washington, for the defendant-intervenor-appellee.

---

## OPINION

McKEOWN, Circuit Judge:

The question we consider is whether this action is barred by the thirty-day time limitation in 16 U.S.C. § 1855(f), the judicial review provision of the Magnuson-Stevens Fishery Conservation and Management Act of 1976 ("Magnuson Act"), 16 U.S.C. §§ 1801 *et seq*. Section 1855(f) provides for judicial review of "[r]egulations promulgated" under the Magnuson Act, but only if "a petition for such review is filed within 30 days."

Consistent with its authority under the Magnuson Act, the National Marine Fisheries Service ("NMFS") issued regulations reopening the part of the Hawaii-based longline fishery that targets swordfish (the "swordfish fishery"). *See* Fisheries Off West Coast States and in the Western Pacific, 69 Fed. Reg. 17,329, 17,330 (April 2, 2004). The fishery had been closed since 2002 due to its impact on endangered sea turtles.

Approximately five months after publication of the regulation, the Turtle Island Restoration Network, Ka'Iwa Lele, and the Center for Biological Diversity (collectively "Turtle Island") filed suit against NMFS, the United States Department of Commerce and the Secretary of Commerce (collectively "NMFS"). The Hawaii Longline Association intervened as a defendant. Turtle Island's complaint did not reference the Magnuson Act, but instead alleged violations of the Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703-712, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

The district court denied Turtle Island's motion for preliminary injunctive relief and dismissed the complaint for lack of jurisdiction. We agree with the district court that Turtle Island's claims, though "framed . . . in terms of violations of the APA [and environmental statutes]" were "in actuality . . . challenge[s] to the reopening of the Fishery." Because the claims are appropriately characterized as an attack on the regulations reopening the fishery, the Magnuson Act's statute of limitation applies, and Turtle Island's petition is barred because it was filed beyond the thirty-day time limitation.

## BACKGROUND

## I.  THE MAGNUSON ACT

The Magnuson Act established a national program for the management and conservation of fishery resources. 16 U.S.C. § 1801(a). Congress delegated fishery management authority to the Secretary of Commerce and established Regional Fishery Management Councils ("Councils") to assist the Secretary in carrying out these duties. The Councils prepare Fishery Management Plans and amendments to those plans, which "contain [ ] conservation and management measures . . . con-

sistent with the [Magnuson Act] . . . and any other applicable law." § 1853(a).

The Councils may also propose regulations implementing the Fishery Management Plans or plan amendments, which NMFS must review for consistency with the Magnuson Act and "other applicable law." § 1854(b)(1). If approved, NMFS publishes such implementing regulations in the Federal Register for a public comment period of fifteen to sixty days. § 1854(b)(1)(A). NMFS then promulgates final regulations with an explanation of any differences between the proposed and final regulations. § 1854(b)(3).

The Magnuson Act provides for judicial review in accordance with the APA of "[r]egulations promulgated by the Secretary" and "actions that are taken by the Secretary under regulations which implement a fishery management plan" but only if "a petition for such review is filed within 30 days . . . ." § 1855(f).

## II.  LONGLINE FISHING AND THE REOPENING OF THE SWORDFISH FISHERY

This dispute concerns the longline fishing of swordfish and its impact on endangered sea turtles and two species of migratory seabird, the black-footed and Laysan albatross. Longline fishing involves the use of vessels that trail mainlines up to sixty miles long. These mainlines are set horizontally near the water's surface and generally contain over a thousand baited hooks. In the course of fishing for swordfish, other species, including sea turtles and seabirds, can become hooked or "incidentally caught." This method of fishing swordfish has been particularly controversial because it results in more incidental catches than other types of longline fishing because of the specific gear and techniques used, the shallower depth at which the longlines are set, and the time of day the fishing takes place.

On April 2, 2004, NMFS promulgated a final rule ("2004 Regulations") implementing a Fishery Management Plan amendment recommended by the Western Pacific Fishery Management Council ("Western Pacific Council"), which is responsible for fisheries in Hawaii. 16 U.S.C. § 1852(a)(1)(H). The 2004 Regulations reopened the swordfish fishery, which had been closed by previous regulations. *See* Fisheries Off West Coast States and in the Western Pacific, 69 Fed. Reg. at 17,330. The 2004 Regulations also restricted the types of bait and hooks that could be used for swordfish fishing to minimize the adverse impacts on sea turtles. *Id.*

Regulation of the longline fishing of swordfish has been the subject of extensive litigation. In fact, the 2004 Regulations were adopted after previous regulations, which prohibited the longline fishing of swordfish (the "2002 Regulations"), and the related biological opinion were vacated and remanded to NMFS by court order. *See Hawaii Longline Ass'n v. Nat'l Marine Fisheries Serv.*, 281 F. Supp. 2d 1, 38 (D.D.C. 2003).[1] The 2002 Regulations prohibited the longline fishing of swordfish due to its impact on endangered sea turtles. Following the 2003 court order, NMFS commenced the formal rulemaking process that led to the current regulations.[2]

NMFS had first published a Notice of Intent in December 2003 announcing an "accelerated management action sched-

---

[1] Both Turtle Island and the Hawaii Longline Association were parties to this litigation. The issuance and subsequent vacating of the 2002 Regulations are discussed at length in the court's decision in *Hawaii Longline Association.*

[2] The court stayed the mandate until April 1, 2004, in order to provide NMFS with reasonable time in which to "issue a new biological opinion," and if necessary, "to issue notice under the APA and promulgate regulations amending the Pelagics [Fishery Management Plan]." *Hawaii Longline Ass'n v. Nat'l Marine Fisheries Serv.*, 288 F. Supp. 2d 7, 13 (D.D.C. 2003). Until April 1, 2004, the 2002 Regulations "effectively govern[ed] the Fishery's activities. *Id.*

ule [that] is necessary to avoid a lapse in sea turtle conservation measures after the June 12, 2002 final rule is vacated on April 1, 2004." Under this accelerated schedule, NMFS would issue two separate supplemental Environmental Impact Statements ("SEISs")—one addressing the fishery's potential impact on threatened sea turtle populations, to be completed first, and another addressing "issues . . . such as seabird interactions," to be completed later. Notice of Intent, 68 Fed. Reg. 67,640, 67,641 (Dec. 3, 2003).

Upon the recommendation of the Western Pacific Council, in January 2004, NMFS published a proposed rule that would "eliminate the prohibition on longline fishing . . . during April and May," and require the use of certain bait and hook combinations to reduce sea turtle interactions. *See* Fisheries Off West Coast States and in the Western Pacific, 69 Fed. Reg. 4098, 4098 (proposed Jan. 28, 2004). The proposed rule announced that the consultation process mandated by Section 7 of the ESA was "currently underway," and that the rule itself "might be revised, as necessary, to comport with . . . the biological opinion." In addition, the proposed rule indicated that in accordance with NEPA, "the [Western Pacific] Council and NMFS prepared a draft [SEIS] . . . for this regulatory amendment . . . scheduled to be filed . . . in mid-January 2004" for comments. *Id.* at 4101. The Western Pacific Council held a public hearing in February 2004 to receive comments regarding the draft SEIS, Notice of Public Hearing on Draft SEIS, 69 Fed. Reg. 7188, 7188 (Feb. 13, 2004), and another public hearing in March 2004 regarding the Fishery Management Plan amendment, Notice of Public Meetings, 69 Fed. Reg. 11,361, 11,361 (Mar. 10, 2004).

NMFS issued a biological opinion in February 2004, which concluded that reopening the swordfish fishery to allow a limited number of sets per year would not likely jeopardize the continued existence of any ESA listed species, provided that certain bait and hook combinations were used. The biological opinion also included an Incidental Take Statement authoriz-

ing the fishery to take up to sixteen leatherback and seventeen loggerhead sea turtles. *See* Fisheries Off West Coast States and in the Western Pacific, 69 Fed. Reg. at 17,331.

In early March 2004, the Western Pacific Council issued a "Regulatory Amendment to the Fishery Management Plan" and a "Final Supplemental Environmental Impact Statement" ("Final SEIS"), which supplemented the earlier 2001 EIS (issued before the 2002 Regulations) and assessed various alternatives. The Western Pacific Council recommended that NMFS allow 2,120 swordfish sets to be made annually and require the use of certain types of hooks and other new technologies "shown to reduce and mitigate interactions with sea turtles."

The Final SEIS focused primarily on the impact of renewed swordfish fishing on endangered sea turtles and said relatively little about the potential impact on seabirds.[3] This approach was apparently deliberate, as NMFS was motivated by the need to implement new regulations by the court-imposed deadline of April 1, 2004. *See* Notice of Intent, 68 Fed. Reg. at 67,641.

On March 30, 2004, NMFS signed a Record of Decision authorizing the reopening of the swordfish fishery: "The main element of this action is to establish a swordfish fishery of limited scale that will permit environmentally responsible shallow-set swordfish longlining while minimizing impacts on protected species of sea turtles in the Pacific Ocean." The "seabird" SEIS was not issued until May 2005, after Turtle

---

[3]As part of its seabird discussion, the Western Pacific Council proposed continuing measures that had been recommended in 2000 by the U.S. Fish and Wildlife Service, but had not been implemented due to the closure of the swordfish fishery in 2001. These avoidance measures included mandatory setting of lines at night to reduce bait visibility and the use of certain kinds of bait.

Island commenced this suit. *See* Seabird Interaction Mitigation Methods, 70 Fed. Reg. 24,037, 24,038 (May 6, 2005).[4]

Turtle Island participated in the formal rulemaking process before the 2004 Regulations were issued. In a detailed comment letter submitted in February 2004, Turtle Island opined that "the proposed regulations are completely unlawful. Substantively, they violate the ESA . . . [and] MBTA . . . while procedurally the [draft EIS] is inadequate under NEPA."

### III.  TURTLE ISLAND'S CLAIMS AND THE DISTRICT COURT PROCEEDINGS

On August 30, 2004, approximately five months after publication of the 2004 Regulations, Turtle Island filed suit in the District of Hawaii seeking declaratory and injunctive relief. Turtle Island did not seek relief under the Magnuson Act, but instead alleged that NMFS violated three other statutes, NEPA, MBTA, and ESA, when it reopened the swordfish fishery. As the jurisdictional basis for its suit, Turtle Island invoked 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201-02 (declaratory judgment and further relief); and 5 U.S.C. § 706 (the judicial review provision of the APA).

The essence of Turtle Island's challenge is set out in its first and second claims for relief, which allege that NMFS violated NEPA and MBTA by "issuing an amended Fishery Management Plan for the Pelagic fisheries of the Western Pacific Region reopening the swordfish fishery and eliminating the partial ban on tuna longlining,[5] by issuing a Record of

---

[4]In its submissions on appeal, NMFS represents that it is "currently preparing a proposed rule, based on this SEIS, to adjust the seabird mitigation requirements for the Western Pacific longline fisheries."

[5]In addition to reopening the swordfish fishery, the 2004 Regulations also eliminated the seasonal ban on the longline fishing of tuna in areas south of the Hawaiian Islands. On appeal, however, Turtle Island's submissions focus exclusively on the reopening of the swordfish fishery. Thus, our discussion focuses on the sections of the 2004 Regulations that address swordfishing.

Decision on or about March 30, 2004 to do so, and by issuing regulations implementing those regulations effective April 2, 2004 . . . in the absence of an adequate [EIS] prepared in accordance with applicable procedures . . . [and] in the absence of a valid permit from the U.S. Fish and Wildlife Service allowing the take of migratory birds by the longline fishery . . . ." Turtle Island's third claim for relief alleges that NMFS's issuance of the Incidental Take Statement violated the ESA because it permits takings of sea turtles in the course of "[l]ongline fishing by the Pelagic Fisheries of the Western Pacific [which] is unlawful, in that it violates [NEPA and MBTA]."

The judicial review provision of the APA is the vehicle for each of Turtle Island's claims. 5 U.S.C. § 702. Neither NEPA nor MBTA authorize a private right of action. By contrast, the ESA contains a citizen suit provision, 16 U.S.C. § 1540(g), whereby "private parties may enforce the substantive provisions of the ESA . . . ." *Bennett v. Spear*, 520 U.S. 154, 173 (1997). However, Turtle Island brought its ESA claim under the APA. *See id.* at 175 (holding that under § 7 of the ESA, claims can be brought pursuant to the APA). Although the APA itself contains no specific statute of limitations, a general six-year civil action statute of limitation applies to challenges under the APA. 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988) (holding that § 2401(a) applies to the APA). Turtle Island contends that this general six-year limit, not the thirty-day provision of the Magnuson Act, applies to its claims.

Turtle Island's complaint requests a declaratory judgment that NMFS violated various statutes and an injunction to stop all longline fishing of swordfish until NMFS complies with the APA, NEPA, MBTA, and ESA.

The district court granted NMFS's motion to dismiss and denied Turtle Island's motion for a preliminary injunction. The district court determined that its "jurisdiction in this matter turn[ed] on whether [Turtle Island's] claims are accurately characterized as violations of various environmental statutes, or if . . . [they] are actually attacking the regulation promulgated pursuant to the MSA, thus implicating the [thirty-day] time bar of 16 U.S.C. 1855(f)." The court concluded that Turtle Island's claims all "flow from the reopening of the Fishery pursuant to a properly promulgated amendment to the [Fishery Management Plan]. Therefore, judicial review is limited under 16 U.S.C. § 1855(f) and this Court lacks jurisdiction to adjudicate this matter."

## ANALYSIS

## I. THE MAGNUSON ACT'S JUDICIAL REVIEW PROVISION: SECTION 1855(f)

[1] Resolution of this case is found in the plain language of § 1855(f). When looking to the plain language of a statute, "we do more than view words or subsections in isolation. We derive meaning from context, and this requires reading the relevant statutory provisions as a whole." *Cal. ex rel. Lockyer v. FERC*, 383 F.3d 1006, 1016 (9th Cir. 2004) (internal quotation marks omitted). " '[O]ur task is to construe what Congress has enacted.' " *Navajo Nation v. Dep't of Health & Human Serv.*, 325 F.3d 1133, 1136 (9th Cir. 2003) (en banc) (quoting *Duncan v. Walker*, 533 U.S. 167, 172 (2001)). Section 1855(f) provides:

(f) Judicial review.

(1) Regulations promulgated by the Secretary under this chapter and actions described in paragraph (2) shall be subject to judicial review to the extent authorized by, and in accordance with [the APA], if a petition for such review is filed within 30 days

after the date on which the regulations are promul-
gated or the action is published in the Federal Regis-
ter, as applicable; except that—

> (A) section 705 of such Title is not appli-
> cable, and

> (B) the appropriate court shall only set
> aside any such regulation on a ground spec-
> ified in section 706(2)(A), (B), (C), or (D)
> of such Title

. . .

> (4) Upon a motion by the person who files a petition
> under this subsection, the appropriate court shall
> assign the matter for hearing at the earliest possible
> date and shall expedite the matter in every possible
> way.

[2] The congressional directive is clear and uncomplicated:
a party seeking judicial review of "[r]egulations promulgated
by the Secretary under the [Magnuson Act]" must do so
within thirty days of their promulgation. § 1855(f)(1). *See
Northwest Envtl. Def. Ctr. v. Brennen*, 958 F.2d 930, 934 (9th
Cir. 1992) (holding that regulations are "promulgated" within
the meaning of this subsection when published in the Federal
Register).

Provided that a complaint is filed within thirty days, the
court reviews the contested regulations in accordance with the
APA *except* that § 1855(f)(1)(A) precludes preliminary
injunctive relief, a remedy ordinarily available under the APA.[6]

---

[6]5 U.S.C. § 705 provides that:

When an agency finds that justice so requires, it may postpone
the effective date of action taken by it, pending judicial review
[and] may issue all necessary and appropriate process to postpone
the effective date of an agency action or to preserve status or
rights pending conclusion of the review proceedings.

The statute also limits the grounds for relief. Under § 1855(f)(1)(B), a court may only set aside regulations if they are: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A); contrary to constitutional right, power, privilege, or immunity, § 706(2)(B); in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, § 706(2)(C); or without observance of procedure required by law, § 706(2)(D). Finally, a party may seek expedited review of the regulations under 16 U.S.C. § 1855(f)(4).[7]

## II. TURTLE ISLAND'S CHALLENGE TO THE REOPENING OF THE FISHERY

The plain language of § 1855(f)(1) leaves no room for discussion: the thirty-day time limit applies whenever a party challenges "[r]egulations promulgated by the Secretary under the [Magnuson Act]." *See Norbird Fisheries, Inc. v. National Marine Fisheries Serv.*, 112 F.3d 414, 416 (9th Cir. 1997) ("[Section] 1855(f)(1), deprives the district court of jurisdiction to hear an attack on the regulations if review is not sought within 30 days . . . ."). The question then is whether Turtle Island's claims are properly cast as challenges to the regulations.

[3] The essence of Turtle Island's complaint is not in dispute—it challenges the reopening of the swordfish fishery. That opening came about as a result of the regulations published on April 2, 2004, yet Turtle Island did not file suit until almost five months later, well beyond the thirty-day limit. Turtle Island attempts to gloss over its statute of limitations problem by assiduously avoiding citation to the Magnuson Act and instead alleging claims under various other environmental statutes. This effort to circumvent the strict time limits under the Magnuson Act is to no avail.

---

[7]Congress added the expedited review language in 1990. *See* Fishery Conservation Amendments of 1990, 1990 U.S.C.C.A.N. 6276, 6298.

**[4]** To be sure, invocation of the magic words, "the Magnuson Act,"[8] is not a predicate to application of § 1855(f) if the substance of the challenge is to the regulations themselves. Notably, § 1855(f) does not state that challenges "under the Magnuson Act" must be brought within thirty days, but instead that judicial review of "*[r]egulations promulgated by the Secretary* under the [Magnuson Act]" must be brought within the stated time limit. (emphasis added).

**[5]** To allow parties to avoid this limitation through manipulation of form—avoiding mention of the Magnuson Act in the complaint—while in substance challenging the regulations, would permit parties "through careful pleading . . . [to] avoid the strict jurisdictional limits imposed by Congress." *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989); *see Block v. North Dakota*, 461 U.S. 273, 285 (1983) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." (quoting *Brown v. GSA*, 425 U.S. 820, 833 (1976))). Thus, the decisive question is whether the regulations are being attacked, not whether the complaint specifically asserts a violation of the Magnuson Act.

**[6]** Turtle Island's insistence that it is not challenging the regulations is not convincing, particularly in light of its motion for preliminary injunctive relief, which seeks to "requir[e] defendants to withdraw their authorization of swordfish longlining in the Pelagic fisheries of the Western Pacific,

---

[8]In other cases where we have considered application of the time bar, the complaint specifically alleged violation of the Magnuson Act, *see Norbird*, 112 F.3d at 416 (concluding that thirty-day limit barred plaintiff's claim that "the regulations violated the Magnuson Act"), or alleged violation of the Magnuson Act *and* other statutes, such as NEPA and ESA, *Northwest Environmental*, 958 F.2d at 933-34 (concluding that plaintiff's claims that "the Regulations violated the Magnuson Act . . . NEPA, and the Coastal Zone Management Act" were filed within thirty days of promulgation of the regulations).

and enjoin[ ] . . . all longline swordfish fishing activities . . . ." As the 2004 Regulations are the source of "authorization of swordfish longlining," Turtle Island's challenge cannot credibly be viewed as anything other than an attack on the regulations.

[7] Similarly, an examination of the complaint reveals that the NEPA and MBTA claims are directed at the regulations implementing the Fishery Management Plan amendment; the claims rest on NMFS's issuance of "an amended Fishery Management Plan . . . reopening the swordfish fishery . . . a Record of Decision on or about March 30, 2004 *to do so*, and . . . regulations implementing those regulations effective April 2, 2004." (emphasis added). Although an agency's issuance of a Record of Decision under NEPA can constitute a final agency action reviewable under the APA, *see Or. Natural Res. Council v. Harrell*, 52 F.3d 1499, 1503 (9th Cir. 1995), to the extent that Turtle Island challenges the Record of Decision here, it does so as a stepping stone to NMFS's promulgation of regulations reopening the swordfish fishery. Turtle Island asks us to view its inclusion of the "Record of Decision" language as a stand alone challenge to agency action, distinct from the issuance of regulations, but to do so makes little sense. Turtle Island is really trying to attack and undo the regulations implementing the Fishery Management Plan amendment, which reopens the swordfish fishery. The Record of Decision is the foundation for those regulations and all of the claims flow from the reopening of the fishery.

[8] Turtle Island's ESA claim is more convoluted but similarly transparent. The gist of the claim is that because reopening the swordfish fishery violated NEPA and MBTA, NMFS violated § 7 of the ESA by permitting the taking of sea turtles in the course of an otherwise "unlawful" activity. Turtle Island asserts that this claim, too, is directed at an agency action—the issuance of an Incidental Take Statement— separate and apart from the regulations. But the text of Turtle

Island's complaint tells a different story: the ESA claim is premised on the issuance of regulations reopening the fishery.

Turtle Island's real objective is belied by the chronology of events. NMFS issued the Incidental Take Statement in February 2004, and the fishery was reopened in April 2004. Standing alone, the Incidental Take Statement did nothing. It became operational, and allegedly unlawful, only upon the promulgation of regulations reopening the fishery.

This case is quite similar to *Blue Water Fishermen's Association v. NMFS*, 158 F. Supp. 2d 118 (D. Mass. 2001), in which plaintiffs sought to enjoin regulations that closed certain areas to longline fishing and claimed that the biological opinion, upon which the regulations were based, violated § 7 of the ESA. The court determined that the ESA claim was clearly an attempt to "evade the jurisdictional limitation imposed" by the Magnuson Act, and that "couching the action in different statutory language is not a hook which can remove the prohibitions of the Magnuson-Stevens Act." *Id.* at 121-22 (internal citations and quotations omitted).

[9] Stymied by the true nature of its claims, Turtle Island offers up an alternate way to avoid § 1855(f), arguing that the thirty-day limitation applies only to purely substantive challenges to the regulations, not procedural challenges. Nothing in the statute purports to distinguish between procedural and substantive challenges to regulations under the Magnuson Act and we divine no basis for such a dichotomy. Section 1855(f)(1)(B) authorizes a reviewing court to "set aside any regulation" that is "not in accordance with law," 5 U.S.C. § 706(2)(A), or "without observance of *procedure* required by law," § 706(2)(D) (emphasis added). The sections relating to Fishery Management Plans, plan amendments, and implementing regulations require compliance with "other applicable law" at each step of the process leading toward the promulgation of regulations. For example, the Councils are required to develop Fishery Management Plans and amend-

ments which are "consistent with the [Magnuson Act] . . . and any other applicable law." 16 U.S.C. § 1853(a). NMFS must review the Fishery Management Plan, plan amendment or implementing regulation to ensure consistency with "any other applicable law." § 1854(a)(1)(A), (3)(A), (b)(1). Read together, we conclude that § 1855(f) is not limited to purely substantive challenges to the regulations, but encompasses claims that NMFS, in promulgating regulations, violated "other applicable law," including procedural statutes.

The notion that jurisdiction under § 1855(f) is contingent on a substantive/procedural distinction can be traced to a misreading of our decision in *Jones v. Gordon*, 792 F.2d 821 (9th Cir. 1986). The plaintiffs in that case alleged that NMFS violated NEPA by issuing a permit that authorized Sea World to capture killer whales without prior preparation of an EIS. We rejected Sea World's claim that the NEPA challenge, brought six months after the permit's issuance, was time barred by the sixty-day time limit found in the Marine Mammal Protection Act's judicial review provision. *Id.* at 824-25. That provision stated:

> Any applicant for a permit, or any party opposed to such permit, may obtain judicial review of the *terms and conditions* of any permit issued by the Secretary under this section or of his refusal to issue such a permit. Such review, which shall be pursuant to chapter 7 of Title 5, may be initiated by filing a petition . . . within sixty days after the date on which such permit is issued or denied.

16 U.S.C. § 1374(d)(6) (emphasis added).

We determined that this provision did "not purport to govern all challenges to section 104 permits" but rather governed only "judicial review of the *terms and conditions* of such permits." *Jones*, 792 F.2d at 824 (internal quotations omitted) (emphasis in original). Given the plain language, the section

"applie[d] only to review of the *substantive* elements of a section 104 permit." *Id.* (emphasis in original). Because "Jones's action d[id] not seek review of the terms and conditions of the Service's permit . . . [but] instead alleged that the Service, by not preparing an environmental impact statement, ha[d] violated the *procedural* requirements of NEPA," the sixty-day statute of limitation did not apply and the APA established jurisdiction for the action. *Id.* (emphasis in original).

Turtle Island misreads *Jones*—a decision that interprets language specific to the Marine Mammal Protection Act—too broadly. Turtle Island attempts to boost its misunderstanding of *Jones* with extensive citation to an out of circuit case, *Conservation Law Foundation v. Mineta*, 131 F. Supp. 2d 19, 24 (D.D.C. 2001), which adopts a similar misreading of *Jones*. In that case, the court relied on *Jones* for the general proposition that plaintiffs raising NEPA-only challenges may always proceed pursuant to the APA rather than pursuant to a more limited substantive statute. *Id.*[9] The court considered whether a claim that NMFS failed to undertake the required NEPA analysis in enacting a final rule reopening previously closed areas to scallop-dredging was subject to the Magnuson Act's

---

[9] *Conservation Law Foundation* in turn relied on *Park County Resource Council, Inc. v. United States Dep't of Agric.*, 817 F.2d 609, 616 (10th Cir. 1987), *overruled on other grounds by Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992). In *Park County*, the Tenth Circuit considered whether a ninety-day statute of limitation under the Mineral Lands Leasing Act, 30 U.S.C. § 226-2 (1982), applied to a NEPA challenge that "happen[ed] to involve an oil and gas lease." 817 F.2d at 616. Despite the broad wording of the jurisdictional provision in that case—"No action contesting a decision of the Secretary *involving* any oil and gas lease shall be maintained unless such action is commenced . . . within ninety days"—the court nonetheless determined that the statute was inapplicable to a "NEPA challenge to the issuance of an oil and gas lease on federal forest land without prior preparation of an EIS." *Id.* at 616-17 (citing § 226-2) (emphasis added). Yet again, in another misapplication of *Jones*, the court held that because NEPA challenges are procedural in nature, they were not controlled by the Mineral Lands Leasing Act's statute of limitation. *Id.*

thirty-day time bar. Rather than interpreting the relevant statutory language, the court in *Conservation Law Foundation* cited *Jones* and determined that as a general rule, "plaintiffs raising NEPA-only challenges may proceed pursuant to the APA, which has no time limitation, rather than pursuant to a more limited substantive statute." *Id.* (internal citations omitted). The analysis in *Conservation Law Foundation* is mistaken, as our conclusion in *Jones* flowed not from any general proposition about NEPA but from a plain reading of the MMPA's jurisdictional provision. Here, too, it is the language of the specific jurisdictional statute, the Magnuson Act, that controls.

The structure of the Magnuson Act is consistent with this reading of the time limit. That such a limited window for judicial review exists specifically with respect to *regulations* makes sense in light of 16 U.S.C. §§ 1852-1854, which establish a highly detailed and public process leading up to the adoption of regulations. *See Tutein v. Daley,* 43 F. Supp. 2d 113, 124 (D. Mass. 1999) ("The entire subchapter is an extremely well-drawn statute with interconnected sections and subsections setting forth a definite path leading to judicial review."). For example, each Council is required to "conduct public hearings . . . so as to allow all interested persons an opportunity to be heard in the development of fishery management plans and amendments to such plans . . . ." § 1852(h)(3). As soon as the Council transmits a Fishery Management Plan or plan amendment to NMFS, it must "immediately publish in the Federal Register a notice stating that the plan or amendment is available and that written information, views, or comments of interested persons . . . may be submitted to the Secretary during the 60-day period." § 1854(a). Similarly, upon the Secretary's approval, the regulations must be published in the Federal Register for a public comment period of up to sixty days. § 1854(b). If the Council fails to develop a necessary Fishery Management Plan or plan amendment, or if the Secretary disapproves of the Council's plan, the Secretary is "given authority to prepare such plan or

amendment" but must "conduct public hearings . . . so as to allow interested persons an opportunity to be heard in the preparation and amendment of the plan and any regulations implementing the plan." § 1854(c).

In addition, the statute sets forth specific time periods for each step in this process, from the development of Fishery Management Plans, plan amendments and implementing regulations, to review and publication, and to the promulgation of final regulations. *See* 16 U.S.C. §§ 1854(a)-(c). Clearly, in crafting the thirty-day limitation for challenges to regulations, Congress intended to "carve out . . . a specific exception for this particular type of claim." *Cal. Save Our Streams*, 887 F.2d at 911 (citation omitted). The Magnuson Act's high level of specificity does not evince congressional intent to allow other, more general statutes of limitation to be transplanted or imported, and thus spoil this fine-tuned scheme. It seems unlikely that Congress would have constructed this well-oiled machine, which anticipates compliance with other applicable environmental statutes, and yet intended its path to be so easily sidestepped.

Finally, three key aspects of § 1855(f)—the thirty-day time limitation, the bar on preliminary injunctive relief, and the provision for expedited review—demonstrate Congress's intent to ensure that regulations promulgated under the Magnuson Act are effectuated without interruption and that challenges are resolved swiftly. This concern for timely implementation of regulations comports with one of the primary purposes of the Magnuson Act: "to provide for the preparation and implementation . . . of fishery management plans which will achieve and maintain, *on a continuing basis*, the optimum yield from each fishery." § 1801(b) (emphasis added).

The facts of this case provide a telling illustration of how the process should and does work. In developing a plan amendment, the Western Pacific Council conducted public

hearings that were open to Turtle Island and other interested parties. NMFS published a proposed rule, which included information regarding the agency's efforts to comply with other applicable law, including drafting an EIS pursuant to NEPA and a biological opinion pursuant to § 7 of the ESA. In the months leading up to issuance of the 2004 Regulations, Turtle Island provided extensive comments, raising several of the arguments that later formed the basis of its complaint— i.e. that the proposed regulations substantively violated ESA and MBTA, and procedurally the EIS was inadequate under NEPA. When the regulations were promulgated at the end of the process, Turtle Island was in prime position to seek judicial review.

Turtle Island urges that applying § 1855(f) to the types of claims it raised would eliminate effective enforcement of environmental laws in commercial fisheries, virtually exempting them from judicial oversight. The sky, however, is not falling. Section 1855(f) applies only to a very specific class of claims—those that clearly challenge regulations promulgated under the Magnuson Act. This regime would not, as Turtle Island suggests, affect every claim that may arise later. For example, the regulatory challenge limitation would not encompass claims that NMFS failed to reinitiate consultation when the taking specified in the Incidental Take Statement is exceeded or a new species is listed or "new information reveals effects of the action that may affect listed species . . . to an extent not previously considered" in the biological opinion. 50 C.F.R. 402.16. Similarly, NEPA imposes a continuing duty to supplement an existing EIS in response to "significant new circumstances or information relevant to environmental concerns bearing on the proposed action or its impacts." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 372 (1989) (quoting 40 C.F.R. § 1502.9(c)). We do not intend these examples to serve as an exhaustive list, but rather as illustrative of the many claims left untouched by § 1855(f).

[10] We conclude that Turtle Island's claims are a challenge to the regulations reopening the swordfish fishery.

Accordingly, the thirty-day time limitation of § 1855(f) applies and we affirm the district court's dismissal of Turtle Island's complaint.

**AFFIRMED.**